IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86875-6-I |
| Respondent, | |
| v. | |
| NARSON SHARRY, AKA: JAYSON RONG, | UNPUBLISHED OPINION |
| Appellant. | |

BOWMAN, A.C.J. — A jury convicted Narson Sharry of fourth degree assault and felony harassment. It also found as an aggravating factor that Sharry committed felony harassment shortly after the jail released him from incarceration. Sharry appeals, arguing that the trial court erred by refusing to bifurcate the aggravating factor from the guilt phase of his trial. Because any error was harmless, we affirm.

FACTS

Around 6:25 p.m. on February 24, 2024, Sharry walked in to Diep Huynh's pho restaurant. Huynh knew Sharry and sometimes gave him free meals. So, when Sharry entered the restaurant, Huynh stood to shake his hand. But Sharry got "really close" to Huynh, pushing him, and said, " 'I want to kill you, motherfucker.' " Huynh pushed back at Sharry, who pulled a knife out of his backpack. Huynh yelled for his employee to call the police, and Sharry ran out of the restaurant. Huynh followed Sharry for about 30 minutes until the police

arrived. Huynh identified Sharry to Vancouver Police Department Officer Andrew Joy, who arrested Sharry. Officer Joy searched Sharry and found a knife in his backpack.

The State charged Sharry with one count of felony harassment and one count of fourth degree assault. It sought a sentence above the standard range, alleging as an aggravating circumstance that Sharry committed felony harassment shortly after the jail released him from incarceration.[1] It alleged that the jail released Sharry just 11 days before the incident.

Before trial, Sharry moved to bifurcate the guilt phase of his trial from the determination of any aggravating circumstance. He argued that the evidence of his recent release from custody was not otherwise admissible in the guilt phase and would unduly prejudice him in what Sharry believed was a "close case." The trial court denied the motion to bifurcate. It noted that "the authority [it] reviewed" disfavored the bifurcation of trials. And it reasoned that the danger of unfair prejudice was not great because Sharry had been in jail for theft in the second degree, a nonviolent crime, and the current charge was different. Still, the court said it would instruct the jury that it could consider the evidence of Sharry's recent release only to determine the aggravating circumstance.

At trial, Huynh told the jury about Sharry entering his restaurant, yelling at him, and pulling the knife. Other witnesses also testified about the incident. Tam Le, one of Huynh's employees, testified that he was sitting at the table with Huynh when Sharry came in and approached Huynh. Sharry said something in

---

[1] *See* RCW 9.94A.535(3)(t).

English that Le did not understand, and then he said "something like 'fuck you' " to Huynh. Le said Sharry pulled a knife from "maybe his body or pants." And he said Sharry "came really close, and I think [Huynh] pushed him first." Tran Tran, Huynh's partner, testified that she was working in the kitchen when she heard a commotion and Huynh yelling. She left the kitchen and saw an adult male leaving in a rush.

The jury also viewed a video of the incident recorded on a nearby security camera. The video is obstructed but generally shows Sharry enter the restaurant, quickly approach Huynh, and lean toward him. It then shows Huynh pushing Sharry away from him and Sharry quickly leaving the restaurant.

Finally, Officer Joy testified about his interactions with Sharry. He said that he found a knife in Sharry's backpack when he arrested him. And he read from a booking sheet that showed the jail released Sharry from custody on February 13, 2024, 11 days before the incident with Huynh. Sharry did not testify at trial but argued that he acted in self-defense.

Before closing arguments, the court instructed the jury:

> Certain evidence has been admitted in this case only for a limited purpose. This evidence consists of certified documents and may be considered by you only for the purpose of determining whether the crime was committed shortly after the defendant was released from incarceration. You may not consider it for any other purpose. Any discussion of the evidence through your deliberations must be consistent with this limitation.

The jury convicted Sharry of both felony harassment and fourth degree assault. And it found by special verdict that Sharry committed felony harassment

shortly after the jail released him from incarceration. The court sentenced Sharry to a concurrent, exceptional upward sentence of 25 months' incarceration.

Sharry appeals.

## ANALYSIS

Sharry argues the trial court erred by refusing to bifurcate the guilt phase of his trial from consideration of the evidence in support of the aggravating circumstance. The State argues that the court did not err, but even if it did, any error was harmless.

We review a trial court's decision on bifurcation for abuse of discretion. *State v. Monschke*, 133 Wn. App. 313, 335, 135 P.3d 966 (2006). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id.*

RCW 9.94A.535(3) lists several aggravating factors that, if found to exist by a jury, authorize a trial court to impose an exceptional sentence upward. One of those aggravating circumstances is when "[t]he defendant committed the current offense shortly after being released from incarceration." RCW 9.94A.535(3)(t). This aggravating circumstance is often called the "rapid recidivism" aggravator. *See, e.g.*, *State v. Murray*, 190 Wn.2d 727, 730-31, 416 P.3d 1225 (2018).

RCW 9.94A.537(4) and (5) discuss the bifurcation of trials—or conducting a "separate proceeding"—when the State alleges an aggravating circumstance. The statute disfavors bifurcation and generally provides that the jury will hear evidence in support of the aggravator during the guilt phase. *See* RCW

9.94A.537(4) (evidence supporting aggravating circumstances "shall be presented to the jury"). But the statute creates four exceptions to the general rule. *Id.* One exception is when the State alleges the rapid recidivism aggravator. *Id.* (citing RCW 9.94A.535(3)(t)). When the State alleges a rapid recidivism aggravator, the trial court may conduct a separate proceeding if

> the evidence supporting the aggravating fact is not part of the res geste of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime.

*Id.*

Here, the trial court determined that the evidence showing Sharry committed felony harassment shortly after the jail released him from custody was not part of the res gestae of the charged crime. And that the evidence of his release was not otherwise admissible at trial. The court then considered whether the evidence was unduly prejudicial to the jury's determination of guilt. In doing so, it determined that the "real danger" of prejudice was if the charge for which the jail released Sharry was like the current charge. And it concluded that because it was not—the jail booked Sharry on a theft charge and the current charge was felony harassment—the evidence was not unduly prejudicial.

We agree with Sharry that the trial court's analysis focused too narrowly on the nature of the charges. Indeed, the evidence the State presented at trial did not identify for the jury the nature of the charge for which Sharry was previously held in custody. And the court's analysis ignored the prejudice to Sharry that may occur from knowledge that he is alleged to have committed a

violent crime on the heels of his release from custody for committing a separate crime. As Sharry points out, such evidence runs the danger of shifting the jury's focus from the merits of the charge to Sharry's general propensity to commit crimes.[2]

Still, under these facts, any error in the trial court's analysis was harmless. An error is harmless if, viewing the record as a whole, there is no reasonable probability that the error materially affected the outcome of the trial. *State v. Booth*, 22 Wn. App. 2d 565, 584, 510 P.3d 1025 (2022). Improperly admitted evidence is harmless if it is of minor significance to the evidence as a whole. *Nghiem v. State*, 73 Wn. App. 405, 413, 869 P.2d 1086 (1994).

Here, the court instructed the jury that to convict Sharry of the crime of felony harassment, the State had to prove these elements beyond a reasonable doubt:

> (1) That on or about February 24, 2024, the defendant knowingly threatened to kill D[ie]p Huynh immediately or in the future;
> (2) That the words or conduct of the defendant placed D[ie]p Huynh in reasonable fear that the threat to kill would be carried out;
> (3) That the defendant acted without lawful authority; and
> (4) That the threat was made or received in the State of Washington.

___

[2] Sharry argues that evidence of his rapid recidivism was particularly prejudicial in light of testimony that he was homeless. And he cites to several news articles, websites, and a YouTube video showing public biases toward homeless people to argue that homelessness "evokes criminality." The State moved to strike those sections of Sharry's appellate brief because the sources are "inadmissible and unreliable." We deny the State's motion to strike. But we note that the evidence at trial showed only that Sharry sometimes came into Huynh's restaurant and received free meals. And Huynh explained that he "didn't charge a lot of people" for meals and said that "[e]ven homeless around there, they know me." Neither Huynh nor any other witness testified that Sharry was homeless.

And to convict Sharry of fourth degree assault, the State had to prove that he assaulted Huynh. The court instructed the jury that "assault" is

> an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

The evidence in support of the State's allegations was strong. Huynh testified in detail about the incident, explaining that Sharry got really close to him and said, " 'I want to kill you, motherfucker,' " before he pushed Sharry away. Sharry then pulled a knife out of his backpack, which scared Huynh. Le corroborated Huynh's testimony. He testified that while he understands little English, he saw Sharry get "really close" and say " 'fuck you' " to Huynh. He said "there was some pushing" and he saw Sharry pull a knife. And the security video from the restaurant tracked both Huynh and Le's testimony. Further, shortly after the incident, Officer Joy found a knife in Sharry's backpack at the time of his arrest. Finally, before closing arguments, the trial court instructed the jury that it could consider Officer Joy's testimony about Sharry's recent release from incarceration "only for the purpose of determining whether the crime was committed shortly after the defendant was released from incarceration."[3] We

---

[3] Citing *State v. Robinson*, 604 N.W.2d 355, 363-64 (Minn. 2000), Sharry argues that the trial court's limiting instruction was ineffective because it admonished the jury at the close of trial instead of at the time the State elicited the evidence. It is true that in *Robinson*, the Minnesota Supreme Court opined that a trial court "should" give a limiting instruction both before admitting a certain kind of evidence and in the final jury instructions. *Id.* Indeed, such a procedure would amount to best practices. But Sharry cites to no authority that the court *must* give a limiting instruction both when the evidence is introduced and again in the final instructions. And, no matter the timing, we presume a jury follows the trial court's instructions. *Hizey v. Carpenter*, 119 Wn.2d 251, 269-70, 830 P.2d 646 (1992).

presume jurors follow the court's instructions. *Hizey v. Carpenter*, 119 Wn.2d 251, 269-70, 830 P.2d 646 (1992).

Viewing the record as a whole, there is no reasonable probability that any error in refusing to bifurcate Sharry's trial materially affected the outcome. We affirm Sharry's convictions for assault in the fourth degree and felony harassment with a rapid recidivism aggravator.

_____, ACJ

WE CONCUR:

_____        _____